Our fourth argument of the morning is in Appeal No. 24-1530, the International Brotherhood of Teamsters v. Republic Airways, and others. Mr. Wilder, nice to see you, good morning. Good morning. May it please the Court, William Wilder for the Teamster Union Appellants. The Union's appeal from the District Court's dismissal of their action under the Railway Labor Act challenging separate individual employment agreements entered by the airlines, one hand at Hyannis Air, a three-party agreement among the airlines and new hire pilots there, and then separately Republic Airlines' own new hire individual agreement. District Court held it lacked subject matter jurisdiction because the disputes were, quote, minor disputes under the Railway Labor Act that required arbitration. Mr. Wilder, in the interest of time here, do you agree that the test we're applying is what's set forth in Consolidated Rail Corporation, whether or not this is a major or minor dispute as defined there? Yes, Your Honor. There's no dispute about the applicable standard for determining whether or not it's a minor  Okay. And you agree that the question then is whether or not the airlines have arguably justified their basis for doing what they've done here under the collective bargaining agreement? Yes, Your Honor. Okay, thank you. I had the same question. I'm not going to belabor the time, but it's very hard from your blue brief to figure out what you think the controlling legal framework is. It's hard. I'll just say that. When you get to the reply brief, you see some passing references to Conrail, but I couldn't tell from the blue brief whether you think Conrail remains good law or not good law. Yes, Your Honor. Conrail remains the governing law, and this issue— Yes, Your Honor. Okay. All right.  And so, the unions submit to the district court—they pled adequate facts to establish the district court's jurisdiction in that the airlines did not have arguable contract justifications for their positions, first under the high NS air agreement in which unions would submit. That has to be determined only under the established meaning and practice of the high NS air contract. And you're not arguing that the airline's position here is in bad faith? No, Your Honor. Okay. You're saying it's frivolous? It's not—it is not arguably justified in that the established practice, for example, at high NS air, as the union has alleged, is that the airline has agreed it may not adopt a bonus scheme for its pilots absent the union's agreement. And that factual allegation alone is sufficient to establish a major dispute at high NS, because that meaning of the high NS CBA, the agreement the party's defendants have entered, clearly violates that established meaning of the high NS CBA, and the unions submit the district court erred in relying on the meaning of the Republic Airlines CBA and Republic Airlines rights under its separate agreement to establish a minor dispute at high NS. That may only be decided—established under the high NS agreement. And so that asserted justification by the airlines is—cannot be arguably justified given that they have— It can't be arguably justified on high NS's part under the management's right—management rights clause? No, Your Honor. Because that, like every other part of the collective bargaining agreement, is subject to high NS's acknowledged and conceded agreement that occurred in the 2022 bargaining, that it may not adopt a bonus agreement unilaterally without union agreement. Okay, where can we find that acknowledgment and or concession as you're talking about the 20—what you just said? Where can we find that? That's alleged in paragraphs 41, 42 of the amended complaint, Your Honor. Now, as I mentioned, that alone is sufficient to establish a major dispute at high NS. As to Republic, an arguable contract justification cannot be based on an argument that either violates the clear language of the agreement or renders it meaningless or superfluous. An arbitrator can't do that without being subject to the award being vacated, and therefore an arguable justification cannot be based on that. As to Article 3.0 of the Republic-IBT agreement, it lays out three different types of incentive programs for three differently defined eligible employees, and this individual agreement violates that structure and its plain language by granting to new hire pilots who under the language of Article 3.0 are only eligible for the incentives under 3.01, the incentives established under 3.03 for captain upgrade that are reserved for qualified pilots. And so that cannot be arguably justified because it conflicts with that clear language and it effectively subsumes 3.03 into 3.01 and renders the separately established scheme under 3.03 superfluous. So on that basis, it cannot be arguably justified under the clear and unambiguous language of the agreements. Is your point with respect to the 41 and 42, I don't want to bog you down on that a little bit, that that relates to the so-called pathway agreement? Yes, Your Honor. That relates to the three-party pathway agreement that applies at Hyannis. Okay, but Republic is paying, at least as I understand the facts or alleged facts, Republic is paying that signing bonus, right? And is that where you say, well, it may be as a technical matter that Republic is paying it, but Republic is acting as an agent of Hyannis? Yes, Your Honor. Is that the argument? Yes, Your Honor, because Republic concedes it's not their employer and that these pilots may never become employees of Republic. So it's paying them that bonus while they're Hyannis employees, it's acting as an agent of Hyannis, and then under the applicable terms, Section 21st, Section 27th, and Section 6, it is bound by Hyannis' status quo obligations. Did you make that agency argument before the district court? I didn't see it. Yes, Your Honor. I mean, I believe we did, yes. I'm not sure. And the last point that I would make, Your Honor, is as to the separate, it's a separate doctrinal issue under the Railway Labor Act under Railroad Telegraphers and its progeny, but we'd simply say that these agreements clearly establish inconsistent terms from subjects covered by the collective bargaining agreement. In essence, you've got pilots, one covered by the agreement, one not, operating under different terms in the same cockpit, and that's, that violates the Railway Labor Act under the doctrine of Railroad Telegraphers. If the court has no further questions, I'd like to reserve the remaining time for rebuttal. Yeah, that's just fine, Mr. Wilder. Thank you, sir. No problem. Okay. Mr. Siegel, good morning. Good morning, Your Honor. Robert Siegel for the Appellee Airlines. Just to make clear in answer to the panel's questions, in our view, the single issue on the appeal is whether the Conrail standard is satisfied. That is a case that was not cited by the unions in their opening brief to this court at all, but that has been the controlling case from the Supreme Court for well over a quarter century. And the issue under Conrail is simply whether the airline's decision to implement the pre-hire employment incentives with the individual pilot candidates is arguably justifiable by the collective bargaining agreements. Can you, just in the interest of time, and you both know the case pretty well, can you go to the point that Mr. Wilder was making about the pathway agreement and, you know, Republic makes the payment, but they're clearly doing that in cahoots with INS, et cetera? You know the argument. Yes. The, well, first of all, the INS does make, I mean, Republic makes the payment, and it's, first of all, our argument that that payment is at least arguably permitted by Section 3.0 of the Republic Collective Bargaining Agreement. This is the- How would that be given that the Republic Collective Bargaining Agreement only governs its agreements with its pilots? And at the time that, my understanding from the record is that at the time Republic makes these payments to the Hyannis pilots, that they are Hyannis employees. Two answers. First of all, if we ever get to arbitration, what we would argue to the arbitrator is that Republic was obtained, bargained for, broad discretion in 3.0 to take steps to cure a problem that was identified in Collective Bargaining, which was a significant pilot shortage, a significant captain shortage at Republic. The parties did not attempt to provide full detail how that discretion would be exercised, and in fact, that's not what normally happens in collective bargaining at all. But the broad discretion was bargained for. In fact, they expanded the language in the Collective Bargaining Agreement to make very clear that Republic had broad discretion to solve the problem. So that's why you say, to go back to the standard, it's arguably justified because that would be our position in arbitration. Presumably, Hyannis would point to the Management Rights Clause as well, and the arbitrator is going to have the task of figuring out, is that a reasonable construction or the proper construction? Absolutely. And that's the Conrail test. That's your position? That is our position, and that's what happens. And that's because they'll be future Republic employees, even though they may not be at the moment? It's a pipeline-type process. Republic cannot hire first officers without the required flight hour experience. The reason they established the pipeline through Hyannis is to enable them to obtain the result that they bargained for. They bargained for a solution to a problem, and they're allowed to, first of all, have a pre-hire agreement with pilots off the street if they have necessary hours, but they also determined that they would establish a pipeline through Hyannis in order to allow for the accrual of hours and then the promotion, as you say, to become first officers and eventually captains of Republic. But the legal point here is, the parties didn't bargain every single detail of how this process would work, nor do unions and carriers regularly bargain every single detail about the terms that they establish in their collective bargaining agreement. What they bargained for, and was fairly clearly stated in Section 30, was a broad discretion to solve the problem, and the language was made even more broad when they amended the collective bargaining agreement as the district court recognized. Now, what did they do about the details? Well, this is how airlines and unions always treat a problem like this. They leave the details to the necessities of the moment, and they have a congressionally mandated process for solving whether those details align with the bargaining intent, and that's the system board arbitration process. It's not a creature of contract, it's a mandate of Congress, and that's what we have suggested here. If there is a dispute about how to implement the broad discretion that was negotiated, there is a congressionally mandated process, it's arbitration. Before the arbitrator, you have a full trial. You have evidence. You have witnesses who describe the bargaining history for Section 30, and you end up, one party or the other, convinces the arbitrator whether or not the steps being taken, such as the pre-hire agreements or the pathway agreements, were in fact aligned with the permission that was negotiated for in 30. But this is, if I might just say, this case in a way is a lot easier than Conrail. Conrail, if one reads it, you discover that the collective bargaining agreement wasn't even in the record before the Supreme Court, and the Supreme Court was not relying on the possible analysis of something like 3.0 of the collective bargaining agreement. It took two steps back and simply said that it was fair enough that the carrier could point to some past practice regarding drug testing, and that that past practice might reflect an implied right. And on that basis, the Supreme Court found that it was a minor dispute for an arbitrator to decide and correctly said, maybe the carrier will win or maybe the union will win. Well, here we have bargained for terms that must be given meaning, and they're broadly stated. And so in terms of the pathway agreement that Your Honor asks about, the first answer is that it reflects a pipeline established by Republic to incentivize pilots to accrue the right number of hours so that they could become Republic first officers and eventually upgrade to captain, which was the whole goal of Section 3.0. There's absolutely nothing that prohibits that, and the Supreme Court in Conrail says it's not an issue of looking for whether it's permitted. Many times the contract will not expressly prohibit or permit, but you have a basic guiding intent of the contract, which was to solve the problem. And then is the way, given your experience, and Mr. Wilder can chime in on this, is the idea then that with the, what's the terminology, systems arbitration board, or, okay. The system, referring to the airline system, system arbitration. Singular, okay. Is the idea then that you have industry specialization in the arbitrators, that the arbitrators are quite familiar with the collective bargaining agreements, and they can make informed assessments about what is reasonable just in the interest of efficient resolution so you don't have strikes and airports paralyzed and things like that? No. It's precisely a good question, and the answer is absolutely yes. In fact, the arbitrators are listed. Usually there's a panel of five or seven arbitrators who are agreed upon by the union and the company and are listed, and then you go through a striking process to pick the arbitrator. But the arbitrators that are used in these situations are not only experts on labor law. They're typically experts on the airline industry. And they have seen, they've been there, done it, and they understand the dynamic. And they, in this kind of situation, they will be, if it ever goes to arbitration, asked to assess whether or not the carrier is exercising or taking steps that align with the discretion that was granted to the carrier in Section 3.0 of the one contract and Section 1.J of the other contract. I mean, that's why, it's also more, to be honest with the court, it's just more efficient and more expedited than courtroom litigation. If we didn't litigate that before an arbitrator, we'd have to have a trial before the district judge, and the district judge would be asked to interpret every single term of the collective bargaining agreement that we're in dispute about. The arbitrators probably have expertise in this area as well. I know, they do, and I think that's why Congress mandated that. So I'm going to ask Mr. Wilder this question, but I'll just get your, so why the resistance to arbitration? I've asked myself that question. If we had, frankly, Your Honor, after the district court dismissed the court case, I would have expected that there would be a request for arbitration, and these issues would have been resolved by now. So I don't know the answer why the union has not done that, but they certainly have the fair opportunity to make these arguments before a qualified arbitrator who is used to hearing questions about bargaining intent, bargaining history, and what the parties intended when they revised Section 3.0 in the manner I've described. Okay, very well. Thank you, Mr. Siegel. Mr. Wilder, you've got some time left. Thank you, Your Honor. As to that last subject that the court dealt with Mr. Siegel on, it's important to understand that these individual employment agreements do not limit themselves to terms and conditions that are covered by the collective bargaining agreement. They also include state court remedies for the airline against the pilot that include post-employment. The System Board of Adjustment has no jurisdiction over those. The System Board of Adjustment is also not expert in the state law in this instance of Indiana concerning non-compete agreements, the ability of an employer to seek liquidated damages from an employee, and when an employee can be required to forfeit compensation that had already been earned and paid. And so this is a somewhat unique case in that you have an airline that has mixed in state law remedies and state law relief into what is otherwise a Railway Labor Act contract. That takes it outside of what is the traditional Railway Labor Act dispute that is submitted to the System Board and which, at least under the assumption of the Act, the arbitrators have more expertise in. It also means that the unions can't get full relief from the System Board against these agreements because they're not parties to the agreements and the airline is proceeding in state court separately against these pilots under those state court remedies. That's why we pled an additional ancillary claim, the fourth claim, to the district court. So this is an unusual case in that it is not one in which the unions can gain full relief from the System Board against these agreements that have already been entered and which the carriers are already seeking to enforce. What I'd also point out as to Hyannis is, again, Republic concedes those pilots may never become their employees. And so it's asserted contract justification first ignores that the Republic agreement on its face plainly excludes anyone other than Republic pilots employed by Republic on the Republic seniority list from its coverage. That can't be disputed. And secondly, it's speculating its ability to use its contract to create an arguable justification of Hyannis is based on this speculative assumption that may never occur. And we would submit that isn't the Conrail standard. The Conrail standard is, what are the established practices and meaning at the carrier in question? And just shortly, I would say, to the extent the district court said that the Republic contract doesn't address its ability to pay benefits to third parties, that simply means the contract can't be interpreted to conclusively resolve the dispute, which is the defining characteristic of a minor dispute according to Conrail. Thank you, Your Honor. Okay. Mr. Wilder, thanks to you and your colleague, Mr. Siegel, you and your colleagues. We appreciate it very much. We'll take the appeal under advisement.